IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL WIDMER, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 13−cv−26−SCW |
| ) | |
| CECIL, JOYCE HOSKINSON, and ) | |
| CAROL HAHN ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

On December 12, 2012, Plaintiff brought suit, claiming that he had been the victim of multiple constitutional violations while incarcerated at Lawrence Correctional Center. (Doc. 1). The Court determined that many of the claims were not related and severed them into separate cases on January 8, 2013. (Doc. 1). The threshold order found that Plaintiff stated a claim against Cecil, the mailroom supervisor, for withholding, delaying, and losing Plaintiff's outgoing and incoming personal and legal and privileged mail. (Doc. 1). The claim against Cecil was for interference with personal and legal mail, and denial of access to the Courts. (Doc. 1). On January 28, 2013, Plaintiff requested leave of the Court to substitute Joyce Hoskinson and Carol Hahn for the previously named John Doe Defendants, which the Court granted on February 15, 2013. (Doc. 19). The Court denied Plaintiff's subsequent attempt to amend the Complaint. (Doc. 58).

On October 31, 2014, the Defendants filed their Motion for Summary Judgment. (Doc. 63). On December 3, 2014, Plaintiff requested an extension of time, which was granted. (Doc. 66). On January 5, 2015, Defendants noted that their original submission on summary judgment failed to include their memorandum of law. (Doc. 67). The Court granted them leave to refile the

memorandum and exhibits in support, and additionally granted Plaintiff two more weeks to respond to the Motion. (Doc. 68). A corrected copy of the memorandum of law and exhibits in support was filed by Defendants on January 10, 2015. (Doc. 69). Plaintiff filed a memorandum in opposition on January 19, 2015. (Doc. 70). Plaintiff contemporaneously filed a Motion for Hearing on the issue of summary judgment. (Doc. 71). Defendants filed no reply brief. Having reviewed the parties' filings, the Court has determined that a hearing is unnecessary. Accordingly, Plaintiff's Motion for a hearing is **DENIED**. (Doc. 71). For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. 63).

**LEGAL STANDARDS**

1. **Summary Judgment Standard**

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.,* 648 F.3d 506, 517 (7th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).** In determining whether a genuine issue of material fact exists, the Court must view the record in a light most favorable to the nonmoving party. ***Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).**

At summary judgment, the Court's role is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. ***Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008)**.

**FACTUAL BACKGROUND**

2

Joyce Hoskinson worked as the mailroom supervisor from 2001 until 2011.  (Cecil Dep. p. 3).  Cecil was assigned to the Office Administrative II position in the Lawrence mailroom in 2011.  (Cecil Dep. p. 2).

Plaintiff was incarcerated at Lawrence Correctional Center from June of 2012 until June of 2013.  (Pl.'s Dep. p. 7).  He departed the facility temporarily on a writ to Stateville Correctional Center between June 25, 2012 and September 12, 2012.  (Pl.'s Dep. pp. 9-10).  When Plaintiff initially transferred into Lawrence, he was housed in the segregation unit.  (Pl.'s Dep. p. 15).  He received a written orientation manual in lieu of attending an orientation session.  (Pl.'s Dep. p. 10).  Plaintiff was released from segregation in December 2012.  (Pl.'s Dep. p. 15).  Plaintiff estimates that he would send three to four personal letters out per week while in segregation.  (Pl.'s Dep. p. 18).  He estimates that he would send out four to five pieces of legal and privileged mail per week consistently.  (Pl.'s Dep. p. 21).

Pursuant to the orientation manual, incoming inmate mail from the Clerk of Courts will be opened and inspected for contraband.  (Doc. 69-6, p. 2).  Incoming and outgoing legal mail is considered privileged mail.  (Doc. 69-6, pp. 2-3).  The orientation manual specifically states that incoming privileged mail means from the following 1) The Director; 2) The Associate Director; 3) Deputy Directors and Assistant Deputy Directors; 4) IDOC attorneys; 5) members of the Advocacy Services office; 6) Administrative Review Board; 7) Prisoner Review Board; 8) the Illinois Governor; 9) legislators, state or federal; 10) Chief Executive Officers of the FBI, DEA, DOJ criminal division, Customs, Secret Service, Illinois State Police, or other sheriff or police departments; 11) John Howard Association; 12) Legal Mail; 13) Foreign Consulate or Embassy or 14) U.S. Marshall.  (Doc. 69-6, p. 2).  Hahn and Cecil testified that an institutional directive controls incoming legal mail, in that the institutional directive requires incoming legal mail to be marked "legal," "privileged," or "confidential" as well as have a return address from an attorney or other legal service.  (Hahn Dep.

p. 24-25) (Cecil Dep. p. 6).   The Illinois Administrative Code also states that incoming privileged mail must be clearly marked 'privileged' in addition to containing the name, title, and address of the sender.  (Doc. 69-5, p. 7).

Outgoing privileged mail is defined as mail to 1) the Director; 2) Assistant Directors, Chiefs, and Deputy Directors of the Department; 3) Department attorneys; 4) members of the administrative review board; 5)  Members of the Prisoner review board; 6) the Governor of Illinois; 7) Federal or Illinois legislatures; 8) Chief Executive Officers of the FBI, DEA, DOJ criminal division, Customs, Secret Service, Illinois State Police, or other sheriff or police departments; 9) Illinois Inspector General; 10) John Howard Association; 11) Clerks of courts; 12) Legal mail.  (Doc. 69-5, p. 3).

Legal mail is further defined in the Illinois Administrative Code as all mail to and from the following: 1) Registered attorneys providing direct legal representation to offenders; 2) states' attorneys; 3) the Illinois Attorney General; 4) Judges or magistrates of any court; and 5) any organization that provides direct legal representation to offenders, excluding referral organizations. (Doc. 69-5, p. 4).

Plaintiff alleges multiple incidents of interference with his mail.  He testified in his deposition that while he was on a writ to Stateville in 2012, his mail was not forwarded to him, despite an IDOC policy that all mail shall be forwarded after 30 days.  (Pl.'s Dep. p. 9)(Doc 69-5, p. 8).  Plaintiff was gone from Lawrence for approximately 59 days.  (Pl.'s Dep. p. 8).  Plaintiff was told that his mail was held because Lawrence staff did not know when he would be returning.  (Pl.'s Dep. p. 49).  Plaintiff conceded that he himself did not know how long the writ was for.  (Pl.'s Dep. p. 50).  Plaintiff also testified that his legal mail was held on this occasion when the relevant policy provides that it should be forwarded immediately.  (Pl.'s Dep. p. 50).

Plaintiff also testified that when he had visitors at Lawrence, they would inform him they had not received mail from him. (Pl.'s Dep. pp. 11-12). He further testified that his friends determined that his outgoing mail was being delayed by comparing the date that Plaintiff wrote the letter to the date on the postmark or the date on which they received it. (Pl.'s Dep. p. 19). Plaintiff has never had an outgoing letter returned to him because it contained contraband. (Pl.'s Dep. p. 43).

Plaintiff's incoming mail was sometimes delayed for more than 30 days, up to 45 days. (Pl.'s Dep. pp. 12, 44). Likewise, he found out during phone calls, visits, and further correspondence that civilians had sent him personal letters that he had not received. (Pl.'s Dep. p. 40). He would also receive personal correspondence that looked like it was missing pages. (Pl.'s Dep. p. 40). Sometimes, Plaintiff received notices that his incoming mail had a foreign substance on it, like lipstick, and was being returned to sender. (Pl.'s Dep. p. 43). Those letters are not at issue here. (Pl.'s Dep. p. 44).

Plaintiff's claim with regards to his incoming legal mail is that he would occasionally receive legal mail from the officer already opened. (Pl.'s Dep. p. 46). He also complains that he would receive documents that are not categorically indexed. (Pl.'s Dep. p. 46). Plaintiff also claims that he received letters that had been marked "legal" with his regular mail already opened. (Pl.'s Dep. p. 48). Plaintiff specifically received mail from the Illinois Attorney General's office already opened and missing pages. (Pl.'s Dep. pp. 57-58). Plaintiff further testified that although he concedes that the IDOC policy entitles the mailroom to open mail from the clerk of the court, he would receive correspondence from the clerk of the court with pages missing or envelopes with no correspondence at all. (Pl.'s Dep. p. 39).

To send his legal mail out, Plaintiff would address it, include his return address, seal it, and mark it as legal mail and put it under his door. (Pl.'s Dep. p. 23). Plaintiff testified that his outgoing legal mail was obstructed. (Pl.'s Dep. p. 25). He testified that he would correctly seal and address

his legal mail with a money voucher for postage.  (Pl.'s Dep. p. 25).  He would then receive the envelopes back, opened with the correspondence removed.  (Pl.'s Dep. p. 25).  Specifically, Plaintiff recalls one instance where he prepared 800 photocopies of a memorandum that he sent out as privileged mail to approximately 40 state senators, representatives, IDOC directors, and deputy directors. (Pl.'s Dep. pp. 25-26).  The memorandum addressed issues that were later filed in some of Plaintiff's other cases. (Pl.'s Dep. p. 26).  A few weeks later, an empty envelope was returned to him from the United States Post Office with a note stating that the Post Office had only received the envelope, not the contents. (Pl.'s Dep. p. 26).  Plaintiff believes this incident occurred in November, although he could not identify the exact month.   (Pl.'s Dep. p. 26).

Plaintiff also testified that Defendants' alleged obstruction interfered with some civil, criminal, and extrajudicial "things" he was working on.  (Pl.'s Dep. pp. 27-28).  He alleges he was not able to give certain Ford County officials notice of his intent to file suit against them.  (Pl.'s Dep. p. 28).  Plaintiff wanted to file suit against certain officials in Ford County for an injury that occurred in 2010 and he was not able to get the suit filed because of obstruction at Lawrence. (Pl.'s Dep. pp. 55-56).   He also stated that he filed an ARDC complaint against an attorney and that he was supposed to file a reply to the attorney's response, but the ARDC never received it.  (Pl.'s Dep. p. 28).  Plaintiff does not recall who he filed the ARDC complaint against.  (Pl.'s Dep. pp. 29-30).  It may have been Matt Fenton or Mike Zopf.  (Pl.'s Dep. p. 30).  He does not recall when he filed this specific ARDC complaint, as he filed several. (Pl.'s Dep. pp. 29-30).

Plaintiff believes that he had two criminal cases and four civil cases pending between June 2012 and December 2012.  (Pl.'s Dep. pp. 30-31).  At the time of his deposition, Plaintiff had over 20 pending cases in state and federal court.  (Pl.'s Dep. p. 22).

Plaintiff also alleges that Cecil confiscated envelopes and cards from him that he had purchased at Danville Correctional Center. (Pl.'s Dep. pp. 50-51). Cecil seized them as contraband without issuing a shakedown slip or returning them. (Pl.'s Dep. pp. 50-51).

Hoskinson retired from the Office Administrator II position in the mailroom on November 30, 2011. (Doc. 69-4).

## ANALYSIS

### A. Defendant Hoskinson

Liability for a § 1983 case does not attach unless the defendant was personally involved in the alleged constitutional violation. **Minix v. Canarecci, 597 F.3d 824, 833 (7th Cir. 2010)**. Defendant Hoskinson submitted an exhibit that she retired months prior to Plaintiff's placement at Lawrence Correctional Center. Plaintiff does not appear to be disputing this evidence. Therefore, Defendant Hoskinson is entitled to summary judgment in her favor.

### B. Interference with Non-Legal Mail

The First Amendment protects inmates' right to send and receive mail. **Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999)**. Policies and practices addressing incoming non-legal mail must be reasonably related to legitimate penological interests. **Id.** Prison security is the type of important penological interest that requires accommodation with a prisoner's First Amendment rights. **Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986)**. Short-term and sporadic delays do not raise constitutional issues. **Rowe, 196 F.3d at 782 (citing Sizemore v. Williford, 829 F.2d 608, 610 (7th Cir. 1987))**. Additionally, the inmate must establish that there is a constitutionally impermissible pattern or practice; isolated instances of negligence will not be sufficient. **Willis v. Washington, 172 F.3d 54 (1999), No. 96-2385 (7th Cir. 1999)(Westlaw)(unpublished disposition)(finding summary judgment warranted where only one package had not been delivered); Kincaid v. Vali, 969 F.2d 594, 602 (7th Cir. 1992)**.

In support of his opposition to the present Motion, Plaintiff submitted his own deposition testimony, in which Plaintiff states that his incoming non-legal mail was frequently delayed, failed to reach him entirely, or arrived with pages missing. Plaintiff testified that he knew these things because certain "civilians" informed him that they sent him letters at certain times, and Plaintiff either never received those letters or received them late. Plaintiff has not submitted any affidavits or deposition testimony from any of these witnesses, despite identifying some of them in his deposition. Plaintiff also did not testify with any specificity regarding any of these letters. He did not identify any specific letters. He did not identify mailing dates versus date of receipt for any non-legal correspondence in his deposition. He did not submit the letters themselves for the Court to review them for missing pages or mailing dates. Plaintiff did not include any specific facts on this issue in his statement of undisputed material facts.

The issue is the same with regard to Plaintiff's outgoing non-legal mail. Plaintiff's only evidence with regards to delays with his outgoing personal mail is his own testimony that his friends and family told him that the mail showed up long after he mailed it, not at all, or with pages missing. This is inadmissible hearsay. Plaintiff did not submit affidavits from the friends and family that allegedly received delayed correspondence from him. He did not offer specific testimony as to the dates that he sent out letters and the dates that his correspondents received them.

The Court notes that Plaintiff submitted a number of his grievances as exhibits. Those grievances do contain more specific details about incidents with Plaintiff's mail. But grievances are not sworn statements, and the Court cannot consider them on summary judgment. **Fed. R. Civ. P. 56(e); Fed. R. Evid. 801(c), 802; *See Jordan v. Van Winkle*, 04-cv-647RM, 2006 WL 2925657, at \*3 (N.D. Ind. 2006) (finding a prisoner's unsworn grievances not admissible on summary judgment to prove the truth of the statements in the grievances)**.

Without the evidence in the grievances, Plaintiff's general allegations that his incoming and outgoing mail was delayed and occasionally tampered with are insufficient on summary judgment. Plaintiff's own testimony reflects that he sent out a high volume of mail.  Without evidence of specific dates and instances of tampering, a fact-finder cannot make a determination of whether the incidents that Plaintiff complains of reflect isolated and sporadic delays or something more than negligence.

Plaintiff has identified three specific incidents in support of his allegations with his non-legal mail.  He testified that the Lawrence mailroom staff held all of his mail when he was on a writ to Stateville, even though it was policy to forward it after thirty days.  Additionally, Plaintiff identified an incident regarding his privileged mail, which the Court considers non-legal mail because although both legal mail and privileged mail are entitled to certain protections under the applicable regulations, the law distinguishes only between legal mail and non-legal mail.  Plaintiff attempted to mail a memorandum to 40 legislators, possibly in November of 2012.  Plaintiff testified that he made 800 photocopies, but it is not clear from the record whether he attempted to mail out all 800 pages at once in one envelope or whether he mailed a 20 page memorandum 40 times.  One envelope was returned to Plaintiff empty.  Finally, Plaintiff states that Defendant Cecil confiscated pre-paid postage postcards that he had purchased at another institution.

A reasonable jury could not conclude from Plaintiff's vague testimony that the mailroom defendants had a pattern or practice of interfering with Plaintiff's non-legal mail.  Plaintiff has only identified three incidents during the relevant time period.[1]  These incidents do not show that there was a pattern or practice of interfering with Plaintiff's mail.  First, all three incidents were of a

---

[1] The Court construes the relevant time period as June 2012 until December 12, 2012, the date Plaintiff filed this Complaint.  This is consistent with Plaintiff's deposition testimony.  While Plaintiff did not provide dates for the three incidents, the Court takes the evidence in Plaintiff's favor and assumes they occurred within the relevant time period.

different character.  Holding mail for a prisoner on a writ is not the same as allegedly as losing an envelope or confiscating prepaid post-cards.

Additionally, nothing about any particular incident suggests that it was part of a practice of interfering with Plaintiff's mail.  While it is certainly unfortunate that Plaintiff's mail was not forwarded to him while he was at Stateville, the Defendants testified that they were uncertain about how long Plaintiff would be away on a writ.  Plaintiff himself confirmed that the length of his writ was uncertain because he was not sure when hearings in his cases would be scheduled.  While Cecil and Hahn may have violated the jail's written policy by not forwarding the mail, that is insufficient to prove a constitutional violation.  **_See Maust v. Headley_, 959 F.2d 644, 648 (7th Cir. 1992)**. There is no evidence that either Defendant intended to delay the mail for any impermissible reason.

Plaintiff's second example that he tried to send out a memorandum to legislators also does not show a pattern or practice.  As discussed above, the evidence is ambiguous on whether Plaintiff sent out a 20 page memo 40 times or an 800 pages memo once.  If he sent out a 20 page memorandum 40 times and one envelope was returned to him, that means 39 envelopes made it through the prison mail room.  That would be evidence that the return of one envelope constituted a single incident of negligence, not that the mailroom had a pattern or practice of interfering with Plaintiff's mail.  If Plaintiff sent out 1 envelope containing 800 pages, that is still not sufficient to show a pattern or practice of interference.  Plaintiff's testimony indicates that the envelope was returned to him by the Post Office, which creates an inference that the prison mail staff at least processed the correspondence.  There is also no evidence to rule out the possibility that the memorandum fell out of the envelope due to its sheer size, or that it was damaged at a Post Office facility outside of the mailroom.  Regardless, the loss of one package does not establish an unconstitutional policy or practice of interfering with Plaintiff's outgoing mail.

Finally, Plaintiff complains that Defendant Cecil confiscated pre-paid postcards that he purchased at another institution. Again, Plaintiff does not provide details about how many postcards were confiscated or when the confiscation occurred. Plaintiff concedes that the postcards were purchased outside of Lawrence. Cecil was reasonable in believing that they were therefore contraband on their face. Although there may have been no reason for Cecil not to mail them out after Plaintiff showed her the receipts, at best this is one incident. Plaintiff has not submitted any evidence that he was prohibited from sending out that correspondence on a different postcard. This incident does not establish that the mailroom had a pattern or practice of interfering with Plaintiff's non-legal mail. On this record, Defendants Cecil and Hahn are entitled to summary judgment on Plaintiff's claims that they interfered with his non-legal mail.

C. Interference with Legal Mail

Prison regulations or practices that impact legal mail are of greater concern to the Court because of the potential interference with a prisoner's right of access to the courts. **Rowe, 196 F.3d at 782**. It may implicate a prisoner's First Amendment right if they receive legal mail opened outside of their presence. **Kaufman v. McCaughtry, 419 F.3d 678, 686 (7th Cir. 2005)**. The first inquiry is whether the mail qualified as legal mail when it was opened. **Id.** The inmate must then show that that the prison had a pattern or practice that actively hindered the pursuit of his claim; it is not sufficient to point to an isolated incident. **Guajardo-Palma v. Martinson, 622 F.3d 801, 805 (7th Cir. 2010).** Proof of a practice of reading a prisoner's correspondence will show hindrance. **Id.** The Court must also consider whether the interception of a prisoner's confidential communication with his attorney was harmless. **Id. ("Indeed, not only the Prison Litigation Reform Act [requiring administrative exhaustion] but also the . . . rights of pretrial discovery in civil . . . litigation, make it unlikely that isolated interferences with attorney-client communications in prisoner cases will block the prisoner's access to meaningful justice.")**

11

Additionally, interference with legal mail can create a claim for denial of access to the courts. To state such a claim, an inmate must offer evidence that his ability to litigate in a specific matter was hampered by official action. ***Kaufman*, 419 F.3d at 686 (7th Cir. 2005)**. In "backward-looking claims," where a plaintiff alleges that specific litigation ended poorly, the plaintiff must give defendants "fair notice" of the claim, including the specific underlying claim that was lost, a description of the official acts that frustrated the litigation, and the remedy that may be awarded as recompense, which must not be available in another potential suit. ***Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007)**.

Plaintiff testified that he often received legal mail that was already opened. However, he did not testify how frequently this happened. He also did not identify specific incidents or specify who send the mail for that particular incident. An important part of the inquiry is whether the allegedly-opened mail qualified as legal mail under the applicable guidelines. There is no evidence on which to make this determination here. Also, without dates it is impossible to determine whether Plaintiff's receipt of opened mail was frequent enough to constitute a pattern or practice, or whether it reflected isolated incidents. Plaintiff indicates that some of the opened mail was from the Illinois Attorney General's Office. The Court notes that the Illinois Attorney General would most likely be representing defendants in Plaintiff's various civil cases, and no harm would result from communications from defendants' lawyers falling into defendants' hands. Without more specific evidence, no reasonable jury could say that the incidents that Plaintiff alludes to rise to more than isolated incidents of harmless conduct.

Plaintiff did allege that the interference with his legal mail made him unable to proceed in two legal matters. Plaintiff identifies an ARDC matter and a case that he wished to file against officials in Ford County, Illinois. The ARDC claim clearly does not state an access to courts claim. Plaintiff was entitled to no relief or damages from filing an ARDC complaint. Additionally, once a

Complaint has been opened, the ARDC investigates independently.  Plaintiff alleges that he was hindered from filing a reply to an attorney's response to an ARDC complaint, but the ARDC does not always require such replies, and there's no evidence that they did so here.  There is also no evidence that failure to reply would cause the ARDC to stop investigating the complaint.  In fact, Plaintiff cannot even identify the specific attorney who was the subject of his complaint.  Since Plaintiff is not entitled to any relief in an ARDC investigation, he has no remedy here for interference with it.

Plaintiff also alleges that he was thwarted from filing a suit in Ford County because the applicable state law requires him to send notice of a potential suit to the relevant officials.  Plaintiff alleges that the interference with the mail caused him to be unable to send the required notice and file the suit.  Plaintiff has not provided fair notice of his potential claim here.  He has not identified the specific underlying claim that was lost by pointing to the statute that supports it or even describing the facts at issue in that case.  He has not identified the remedy that would have been available to him in that case but for Defendants' misconduct.  He has not submitted any evidence that the remedy is no longer available to him through other litigation.  On these facts, Plaintiff is not entitled pursue his claim that the interference with his legal mail caused him to forego suing Ford County officials.

Additionally, there is evidence that the alleged interference with Plaintiff's mail had no effect on his attempts to access the Court system.  Plaintiff testified that he had six lawsuits pending when he arrived at Lawrence; he filed this lawsuit along with four others while he was there, and he has continued filing lawsuits up until the present.  For all of the above reasons, the Court finds that Defendants Hahn and Cecil are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 63).  Plaintiff's Motion for a hearing is **DENIED**.  (Doc. 71).

**IT IS SO ORDERED**.

**DATED: April 20, 2015**                                        /s/ *Stephen C. Williams*
                                                                 **Stephen C. Williams**
                                                                 United States Magistrate Judge